UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| Sarah Beth Cain, | ) |
| Plaintiff, | ) NO. 2:17-cv-00055 |
| | ) CHIEF JUDGE CRENSHAW |
| v. | ) MAGISTRATE JUDGE FRENSLEY |
| TENNESSEE TECHNOLOGICAL UNIVERSITY, MARC BURNETT, individually and in his official capacity, KATHERINE WILLIAMS, individually and in her official capacity, ROBERT OWENS, individually and in his official capacity, KAE CARPENTAR, individually and in her official capacity, MARLENE HALL, individually and in her official capacity | ) |
| Defendants. | ) |

PLAINTIFF'S REPONSE TO DEFENDANTS' REPLY

INTRODUCTION

Plaintiff files this response to Defendants' ("Reply") to Plaintiff's Memorandum of Law in Opposition ("Opposition Memorandum"), to Defendants'' Motion to Dismiss ("Motion to Dismiss"). Defendants' Reply is centered around misrepresentations of the claims set forth in Plaintiff's Second Amended Complaint and subsequent filings. Furthermore, Defendants attempt to impose a burden on Plaintiff's Second Amended Complaint that is much higher than that which is required by the plausibility standard. In order to survive a motion to dismiss for failure to state a claim, Plaintiff's complaint must contain "actual content that allows the court to

1

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 556.

## I. PLAINTIFF'S COMPLAINT SATISFIES ALL ELEMENTS OF THE DAVIS TEST

The Davis Test warrants a finding of deliberate indifference because Plaintiff's deprivation of equal access to the University's resources was a direct consequence of TTU's continued refusal to conduct a timely investigation into her complaint of sexual assault. Defendants assert that Plaintiff's claims fail as a matter of law. *See* (Reply to Opp'n Mem, ECF No. 25). This assertion is followed by a recitation of the elements of the Davis test and a conclusory statement that these elements have not been satisfied by Plaintiff's Complaint. *Id* at 4. The only argument presented in support of the assertion that Plaintiff's claim fails any element under the Davis is predicated on a misrepresentation of the cause of action that Plaintiff cites in support of her claims.

The hostile nature of the educational environment was not exacerbated by TTU's notification to Respondent, but rather by their continued failure to issue such notification over the course of several months. Plaintiff feared that she would be subject to retaliation by Respondent after he was made aware of her complaint, but nonetheless she understood that TTU was obligated to notify him of the allegations against him in order to move forward with an investigation. Despite their promises, Defendants did not notify Respondent of the allegations against him for 105 days after Plaintiff filed her administrative complaint. Consequently, Plaintiff was forced to go to her classes every single one of these days, fearing that it would be the first day that Respondent knew that she had reported the sexual assault to the University.

2

Defendants allowed for the existence of a sexually hostile educational environment by unreasonably and unjustifiably delaying the investigation process for over 16 months and by ignoring Plaintiff's multiple pleas for their assistance in accessing relief from this environment.

## II. PLAINTIFF'S TITLE IX CLAIMS WARRANT THE APPLICATION OF EQUITABLE TOLLING

### A. Plaintiff's Fraudulent Concealment Argument is valid

Plaintiff's claim merits the application of equitable tolling to account for TTU's attempts to prevent Plaintiff from discovering her cause of action by failing to notify her that an investigation into her complaint had been concluded. Contrary to Defendants' attempt to portray TTU's dilatory tactics as a "failed mediation" attempt, there is no evidence that TTU ever had any intention of engaging in such a mediation. Defendant Carpenter wrote to Plaintiff's former counsel, Alex Little, in February 2017, stating that TTU was "amenable to mediation". However, without any apparent reason, TTU spontaneously withdrew their agreement to engage in any type of conciliatory meeting just days before the scheduled date for the mediation in April 2017. The same day that TTU revealed their decision not to participate in mediation, TTU released a copy of the Investigative Memorandum . The cover page of this memorandum indicates that it had been sent to Defendant Burnett in January 2016. Defendants have never offered a reason why the investigation's findings, or even the fact that the investigation had been concluded, was withheld from Plaintiff for two months; there are only two possibilities: Defendants deliberately concealed the information from Plaintiff or Defendants were negligent in their duties to inform Plaintiff that the investigation had been concluded. Either of these explanations supports at least one of Plaintiff's causes of action.

Defendants argue that Plaintiff must have known of her injuries at the time that she scheduled the mediation and therefore the accrual of her claims began at that time, however, this is not the case. Plaintiff was aware that her administrative complaint had been unresolved and that it had been an excessively lengthy amount of time since she filed it. Therefore, although Plaintiff knew that the University had failed to conduct a timely investigation into her complaint, she was not aware of all of the facts that ultimately comprise the causes of action in this lawsuit. At this stage in litigation, it is not necessary for Plaintiff to prove why Defendants did not inform her of the investigation's conclusion until April 2017, it is only necessary to show that there are actual facts which make it plausible that Defendants' acted unlawfully.

### B. The Continuing Violations Doctrine is Applicable

Defendants' refusal to proceed with an investigation into Plaintiff's complaint demonstrated a policy of discriminatory behavior. Plaintiff's Title IX claims warrant the application of the Continuing Violations Doctrine. The facts in this case are significantly different from the facts in the case cited by Defendants in their attempt to disqualify the application of the Continuing Violations Doctrine. *See Dibbern v. Univ. of Mich.*, No. 12-15632, 2016 WL 2894491, at *19 (E.D. Mich. May 18, 2016). A significant part of the court's decision in *Dibbern v. Univ. of Mich* was made based on the issue of applying the Continuing Violations Doctrine to the plaintiff's claims of retaliation, which were deemed to be discrete acts and thus were not implicated by the doctrine of Continuing Violations. Plaintiff does not make claims of retaliation in the Second Amended Complaint.

The causes of action described in the Second Amended Complaint reference violations of Title IX, however it is relevant to this matter to acknowledge that Plaintiff was also an employee of the University at many times relevant to this matter. Although Plaintiff did not explicitly

4

allege violations of Title VII in the Second Amended Complaint, her employment at the University was also subject to the hostile sexual environment created by TTU's acts and omissions related to her complaint of sexual assault. At the time of her assault, Plaintiff was working as a student researcher in the Chemical Engineering Department at TTU and was funded by a grant for undergraduate researchers. After her sexual assault by Respondent, Plaintiff's academic performance declined significantly and she was consequently unable to secure the research grant the following semester. Plaintiff discussed this situation with Defendant Hall at the time, but Defendant Hall did not offer any guidance with respect to this issue. Plaintiff also worked as a counselor at a TTU summer camp for young girls in June 2016. In addition to the added complexity of Plaintiff's dual status as an employee and student,

Therefore, the court should look beyond this district's reluctance to apply the doctrine outside of Title VII.

### III. STATES DO NOT HAVE ELEVENTH AMENDMENT IMMUNITY UNDER TITLE IX

#### A. Plaintiff's request for injunctive relief is justified

Plaintiff's reference to *Ex Parte Young* is fully justified because, as she explained in her Opposition, TTU was still in violation of its duties under Title IX at the time that she filed the Second Amended Complaint. Although Title IX may not require that schools make an accessible grievance procedure, it does require the school to respond to reports of sexual harassment, and TTU's inaccessible reporting policy is just one example of the insufficient practices and procedures used by Defendants to respond to complaints of sexual misconduct. The requests contained in Plaintiff's Prayer for Relief are more specific than the wording of Title IX, however, the University has failed to comply with its obligations under Title IX and Plaintiff's

5
Case 2:17-cv-00055   Document 36   Filed 05/08/18   Page 5 of 8 PageID #: 443

request for specific procedures are intended to remedy that failure. (Second Am. Compl., "Prayer for Relief")

### B. Title IX Contains an Express Statutory Abrogation of Eleventh Amendment Immunity for Title IX Suits[1]

In the Opposition Memorandum, Plaintiff cites three authorities to explain why states do not have Eleventh Amendment Immunity Under Title IX. Defendants only responded to the last of these three reasons in their Reply. Defendants failed to respond to, and hence waived any opposition to, Plaintiff's argument that recipients of federal funding for educational programs implicitly consent to suit in federal court for violations of nondiscrimination statutes. (Opp'n Mem. 8).

## IV. DEFENDANTS ARE NOT SHIELDED BY QUALIFIED IMMUNITY

### A. Defendants deprived Plaintiff of Rights Guaranteed by the United States Constitution without due process.

#### 1) A constitutional right was clearly established

Plaintiff had a property interest in the form of tuition paid to the University and in the educational benefits offered by the University. Plaintiff also had a liberty interest in the right to acquire useful knowledge. *See 262 U.S. at 399*.

#### 2) The Individual Defendants knowingly violated Plaintiff's constitutional rights.

Since Defendant Hall did not attempt to assist Plaintiff, or provide her with any information about the possibilities of having failed classes removed from her transcript and GPA, Plaintiff was forced to retake one of the courses which is most fundamental to the study of Chemical Engineering.

---

1. "Title IX Legal Manual::" Justicia, www.justicia.com/education/docs/title-ix-legal-manual/private-right-of-action/

Defendant Hall and Defendant Owens had a duty to perform a timely investigation into Plaintiff's complaint but they unreasonably delayed the investigation and prolonged the period of time in which Plaintiff did not feel free to access all of the University's resources. Individual Defendants were employed in positions that should have required their familiarity with the constitutional rights that must be honored for both the victims and the accused.

## CONCLUSION

In conclusion, Plaintiff's Second Amended Complaint is sufficient under legal standards to survive a motion to dismiss. Additionally, Plaintiff effectively addresses all substantive and procedural issues raised by Defendants' in her Opposition to Defendants' Motion to Dismiss. Respectfully signed this 4th day of May, 2018.

Sarah Beth Cain

Plaintiff

5/4/18
(Date)

*SarahBethCai* (Signature)

Sarah Beth Cain
(Printed Name)

500 Dry Valley Rd., E306
Cookeville, TN 38506

(615) 485-3459

(Address and Telephone Number)

Sarah Beth Cain
500 Dry Valley Rd., E306
Cookeville, TN 38506



Nashville P&DC 372
SUN 06 MAY 2018 AM

Nashville Clerk's Office
801 Broadway, Room 800
Nashville, TN 37203

**RECEIVED**
IN CLERK'S OFFICE
MAY 0 8 2018
U.S. DISTRICT COURT
MID. DIST. TENN.