| | |
|---|---|
| SARAH BETH CAIN, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>TENNESSEE TECHNOLOGICAL )<br>UNIVERSITY ("TTU"), et al., )<br>)<br>**Defendants.** ) | Civil Action No. 2:17-cv-00055<br>Judge Crenshaw / Frensley |

## REPORT AND RECOMMENDATION

### I. Introduction, Background, and Allegations of Plaintiff's Second Amended Complaint

This matter is before the Court upon Defendants' Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Docket No. 24.[1] Along with their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law. Docket No. 25. Defendants seek to dismiss Plaintiff's state law claims and 42 U.S.C. § 1983 official capacity claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and Plaintiff's Title IX claims and 42 U.S.C. § 1983 individual capacity claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* at 4-5. Specifically, Defendants argue that: (1) Plaintiff's 42 U.S.C. § 1983 claim and state law claims are "barred by various immunity doctrines"; (2) Plaintiff's Title IX claim is untimely; and (3) Plaintiff's factual allegations are insufficient to

---

[1] Also pending before the Court is a Motion to Dismiss Plaintiff's original Complaint filed by Defendants Marc Burnett, Katherine Williams, and Tennessee Technological University. *See* Docket No. 11. Because Plaintiff has subsequently filed an Amended Complaint (Docket No. 16) and a Second Amended Complaint (Docket No. 17), Defendants' initial Motion to Dismiss (Docket No. 11) is MOOT.

establish liability. Docket No. 24. Defendants argue that because "[n]o amendment can feasibly cure these defects; therefore, grounds exist to dismiss the Second Amended Complaint with prejudice." *Id.*

Plaintiff, who is proceeding pro se, has filed a Response (Docket No. 26) and a supporting Memorandum (Docket No. 27). Plaintiff argues that, "Although at first glance, it may appear that the statute of limitations for Plaintiff's claims are expired, . . . there are substantial extenuating circumstances which will be described [in her supporting Memorandum]." Docket No. 26. Plaintiff argues that "the circumstances of this case disqualify Defendants from the various types of immunity claimed in the Motion to Dismiss." *Id.* Finally, Plaintiff maintains, "a significant portion of the arguments made in the Memorandum of Law in Support of Defendants' Motion to Dismiss are predicated on the theory that Plaintiff intends to find Defendants liable for her sexual assault in August 2015. This is not the basis of any of Plaintiff's claims . . ." *Id.*

With leave of Court (Docket No. 30), Defendants have filed a Reply (Docket No. 32). In their Reply, Defendants argue that Plaintiff's Response and supporting Memorandum fail to "meaningfully respond to the arguments raised in Defendants' Motion to Dismiss," because it "contains no rebuttals to the cases cited in Defendants' Motion to Dismiss, nor does it add cases that would support a finding of liability in similar factual situations." Docket No. 32. Defendants argue that neither Plaintiff's Response nor her supporting Memorandum show that Defendants' response to Plaintiff's sexual harassment report "meets the very high bar of deliberate indifference required to pursue liability under Title IX." *Id.* Defendants also note that Plaintiff's Memorandum raises new facts, which cannot be considered for purposes of the instant Motion to Dismiss because they were not alleged in the Second Amended Complaint. *Id.*, n. 1, *citing Neal v. Shelby Cnty.*

2

*Gov't Cmty. Servs. Agency*, 815 F. Supp. 2d 999, 1002-03 (W.D. Tenn. 2011).

Also with leave of Court (Docket No. 35), Plaintiff has filed a Sur-Reply (Docket No. 36). In her Sur-Reply, Plaintiff argues that "Defendants' Reply is centered around misrepresentations of the claims set forth in Plaintiff's Second Amended Complaint and subsequent filings. Furthermore, Defendants attempt to impose a burden on Plaintiff's Second Amended Complaint that is much higher than that which is required by the plausibility standard [required to survive a Motion to Dismiss for failure to state a claim]." Docket No. 36.

Plaintiff, pro se, filed her Second Amended Complaint in this action on December 29, 2017, pursuant to 42 U.S.C. § 1983 and Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"). Docket No. 17. Plaintiff avers in her Second Amended Complaint the following factual allegations:

Plaintiff avers that she was sexually assaulted in her off-campus apartment on August 26, 2015; that, as a result, she underwent examination and received treatment; that she sought to pursue criminal charges against her assailant; and that she filed to receive an Order of Protection from her assailant. *Id.*, ¶¶ 13-17. Plaintiff avers that a copy of her Order of Protection was thereafter sent to Defendant's campus police department. *Id.*, ¶ 17.

Plaintiff maintains that, on or about October 1, 2015, Defendant's Title IX Coordinator Marlene Hall contacted her via email and requested a meeting so that she could explain to Plaintiff the options for filing an administrative complaint against Plaintiff's assailant for sexual misconduct. *Id.*, ¶ 18. Plaintiff and Ms. Hall met on October 5, 2015 in Ms. Hall's office on the TTU campus, and Ms. Hall informed Plaintiff about Plaintiff's right to file an administrative complaint. *Id.*, ¶ 19. Plaintiff reports that she explained that she wanted to attempt to pursue her options in the criminal

and civil justice systems before trying to navigate the procedural steps of an administrative complaint, and that Ms. Hall assured her that she could later choose to file an administrative complaint. *Id.*, ¶ 20. Also during the October 5, 2015 meeting, Plaintiff reports that she described to Ms. Hall the "severe emotional effects" which she had been suffering since her assault. *Id.*, ¶ 21. Plaintiff avers that those "severe emotional effects" include having difficulty with focus and problems with her working memory. *Id.* Plaintiff asserts that Ms. Hall confirmed that many of the psychological effects described by Plaintiff in the meeting were not uncommon for a victim to experience in the aftermath of a rape. *Id.*

Plaintiff additionally avers that she contacted Ms. Hall on November 11, 2015 to request that the University proceed with an administrative investigation and take disciplinary action against her assailant. *Id.*, ¶ 22. Plaintiff met with Ms. Hall the following day, on November 12, 2015, to recount the details of her rape and to file her administrative complaint. *Id.*, ¶ 23. While at the November 12, 2015 meeting, Plaintiff reports that Ms. Hall assured her that the University would investigate her claim. *Id.* Also during the November 12, 2015 meeting, Plaintiff provided her assailant's name to Ms. Hall and Ms. Hall indicated that there was a possibility that she knew of another incident involving allegations against Plaintiff's assailant. *Id.,* ¶ 24. Plaintiff reports requesting additional information about such allegations, but Ms. Hall declined to definitively confirm or deny the existence of other claims against the assailant that were then-pending. *Id.*

Plaintiff contends that for several weeks after their November, 12, 2015 meeting, Plaintiff and Ms. Hall corresponded regularly. *Id.*, ¶ 25. Plaintiff reports that in these correspondences, Ms. Hall continued to assure Plaintiff that she could file the administrative complaint, and further informed Plaintiff, during several of these conversations, that Ms. Hall would need to speak to

4

University Counsel to assure that Plaintiff's claim fell into "Clery or Title IX Geography." *Id.* Plaintiff avers that Ms. Hall subsequently confirmed to Plaintiff that she had conferred with University Counsel and that TTU would be able to conduct an investigation into the assault. *Id.* Ms. Hall requested another meeting with Plaintiff and with Dr. Robert Owens, Ms. Hall's Title IX Investigator. *Id.* Plaintiff, Ms. Hall, and Dr. Owens met on December 1, 2015. *Id.*, ¶ 26. During that meeting, Plaintiff recounted the painful details of the circumstances surrounding her rape by the named assailant. *Id.*

During the period of time between Plaintiff's request for an administrative investigation and the end of the Fall 2015 semester, Plaintiff avers that she contacted Ms. Hall multiple times, via both telephone and email to express her mounting anxiety and the emotional distress caused by the assault and her subsequent struggles to keep up in her classes. *Id.*, ¶ 27.

In January 2016, Plaintiff engaged Alex Little as her counsel to assist her in her communications with TTU. *Id.*, ¶ 28. In February and March 2016, Mr. Little telephoned Ms. Hall and insisted that TTU launch an investigation into the sexual assault of Plaintiff. *Id.*, ¶29. TTU did not interview Plaintiff's assailant until March 12, 2016. *Id.*, ¶ 30.

On Plaintiff's behalf, Mr. Little wrote to Ms. Hall on May 2, 2016 requesting "An immediate update" regarding the status of the investigation and notifying Ms. Hall that Plaintiff "specifically demand[s] that the University initiate disciplinary proceeding[s]" against Plaintiff's attacker "before the end of the semester." *Id.*, ¶ 31.

On May 6, 2016, Kae Carpenter, University Counsel, responded to Mr. Little via letter, in which she declined to provide an update about the investigation or initiate disciplinary proceedings against Plaintiff's assailant. *Id.*, ¶ 32. Ms. Carpenter further informed Mr. Little that Plaintiff

5

would need to meet with Ms. Hall and Mr. Owens to answer follow-up questions that arose during their interview with Plaintiff's assailant. *Id.*

On May 17, 2016, Plaintiff met with Ms. Hall and Mr. Owens to answer their follow-up questions. *Id.*, ¶ 33. The questions which were posed by Mr. Owens and Ms. Hall were largely unrelated to the substance of Plaintiff's sexual assault, and, according to Plaintiff, were re-victimizing, as they inferred blame on her part and required her to again recount the most painful details of her rape. *Id.*

On January 11, 2017, Mr. Little again wrote Ms. Carpenter to inform her of Plaintiff's intent to sue TTU for its failure to comply with Title IX with respect to the sexual assault committed against her by a fellow student on August 26, 2015. *Id.*, ¶ 34. In his letter, Mr. Little also proposed the possibility of engaging a mediator to "work with the parties to facilitate the process that could lead to a settlement - even before the filing of a complaint." *Id.*, ¶ 35.

On February 2, 2017, Ms. Carpenter sent an email to Mr. Little confirming that TTU "is amenable to mediating the issues raised in your January 11, 2017 letter." *Id.*, ¶ 36. Ms. Carpenter also wrote in this email that she had "placed a hold on calendars of Tennessee Tech officials for the dates of April 4-7." *Id.* On March 10, 2017, Mr. Little's associate, Mandy Strickland-Floyd, wrote to Ms. Carpenter with a proposed list of mediators, dates, and locations. *Id.*, ¶ 37.

On March 23, 2017, Ms. Strickland-Floyd informed Plaintiff that a mediation with TTU had been confirmed for April 3, and that Plaintiff's attendance at this meeting would be required. *Id.*, ¶ 38. Plaintiff objected because that meeting would interfere with her final exams, which were scheduled by the University. *Id.* On March 28, 2017, Ms. Strickland-Floyd sent Plaintiff an email stating, "It may be possible to have the University reschedule your exam so you can attend on April

6

3, given the number of lawyers that have already planned to be there." *Id.*, ¶ 39. Also in her email, Ms. Strickland-Floyd attached a FERPA waiver to authorize TTU to disclose Plaintiff's educational records for purposes of mediation. *Id.*, ¶ 40. Plaintiff reluctantly agreed to try to speak to her professor about rescheduling her final exam. *Id.*, ¶ 41. Plaintiff approached her professor the next day, but was denied the opportunity to retake the exam. *Id.*

On Thursday, March 30, 2017, Ms. Carpenter notified Plaintiff, by and through Mr. Little, that TTU was no longer agreeable to mediation, would not be present for the April 3 mediation, and was not interested in rescheduling. *Id.*, ¶ 42. Ms. Carpenter also informed Mr. Little that TTU had concluded its Title IX investigation into the sexual assault of Plaintiff. *Id.* Later that afternoon, Ms. Hall emailed Mr. Little a copy of TTU's Investigation Memorandum and a notification to Plaintiff that, "Tennessee Tech has completed its investigation and the Vice President has concurred in the findings and recommendations detailed in the attached investigative memorandum." *Id.*, ¶ 43. The memorandum attached to Ms. Hall's email was a thirteen page investigative report from Ms. Hall to Mr. Marc Burnett, Vice President for Student Affairs, that concluded that the named assailant's conduct constituted "sexual misconduct," and more specifically, "sexual assault" under TTU Policy 143. *Id.*, ¶¶ 44, 45. The report further included recommendations that the findings of the report be adopted by the Vice President of Student Affairs and that the matter be forwarded to the Office of the Dean of Students for appropriate disciplinary action. *Id.*

Plaintiff avers that Defendants violated her rights under Title IX by discriminating against her, creating a hostile environment that effectively deprived her of the educational opportunities and benefits provided by the University, and being deliberately indifferent to the continued harassment of Plaintiff by her assailant. Docket No. 17, pp. 8-13. Plaintiff further avers that Defendants violated

7

her rights under § 1983 by failing to provide Plaintiff with the process that she was due because they failed to follow TTU's policies and procedures, failed to adequately conduct the sexual assault investigation, failed to take any action against the assailant, failed to complete the investigation that was begun for nearly two years after Plaintiff filed her complaint, and failed to keep her informed as to the status of the investigation. *Id.* at 13-14.

Plaintiff further avers that the acts and omissions of Defendants have caused the intentional infliction of emotional distress upon her such that she has been under the care of mental health professionals who specialize in post-traumatic stress disorder ("PTSD") continuously since her sexual assault in August 2015. *Id.* at 14. Specifically, Plaintiff contends that Ms. Hall had detailed knowledge of the acute PTSD symptoms from which Plaintiff suffered, but nevertheless posed questions suggesting that Plaintiff was partly at fault for her rape and the accusatory questions posed to her during the March 17, 2016 interview with Ms. Hall and Mr. Owens caused her to unnecessarily recount the trauma of her rape and have resulted in her suffering serious mental and emotional injuries that impair her enjoyment of daily life. *Id.* at 14-15.

Plaintiff finally avers that the acts and omissions of Defendants Hall, Carpenter, Burnett, Williams, and Owens deprived her of full access to University resources and created a hostile sexual educational environment because they breached TTU's duty to take action in response to her report of sexual assault, they failed to adhere to the policies and procedures set out in TTU's Policy 143 by neglecting to review the investigation report for more than two months after it was sent and failing to send Plaintiff a copy of the investigation report for over two months after it was issued, and they failed to take any disciplinary action against the assailant either before or after the investigation. *Id.* at 15. Plaintiff maintains that as a direct and proximate result of Defendants'

8

negligence, she suffered severe emotional distress. *Id.* at 15-16.

As to her Title IX and §1983 claims, Plaintiff sues Defendants in their individual and official capacities. *Id.* at 8, 18. For her Intentional Infliction of Emotional Distress claim, Plaintiff sues Defendants Hall and Owens in their individual capacities. *Id.* at 14. Regarding her Negligent Infliction of Emotional Distress Claim, Plaintiff sues Defendants Hall, Carpenter, Burnett, Williams, and Owens in their individual capacities. *Id.* at 15. Plaintiff seeks compensatory damages in an amount to be determined by the Court that includes pre and post judgment interest, injunctive relief, costs, and other relief as the Court may deem proper. *Id.* at 16-17.

For the reasons set forth below, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 24) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

## II. Law and Analysis

### A. Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

Defendants assert Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as grounds for their Motion to Dismiss. Docket No. 24. Fed. R. Civ. P. 12(b)(1) provides that a complaint may be dismissed for lack of subject matter jurisdiction, while Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. The Court will focus on the Rule 12(b)(6) Motion.[2]

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim

---

[2] A dismissal for failure to state a claim upon which relief can be granted is a dismissal on the merits. *See Federated Dept. Stores, Inc., v. Moitie*, 452 U.S. 394, 399 n. 3 (1981); *Pratt v. Ventas, Inc.*, 365 F. 3d 514, 522 (6th Cir. 2004). It is therefore unnecessary for the Court to discuss Defendants' arguments under Rule 12(b)(1).

upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id*. A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

10

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

**B. 20 U.S.C. § 1681 ("Title IX")**

Plaintiff alleges violation of her rights under 20 U.S.C. § 1681, *et seq.* ("Title IX"). Docket No. 17. 20 U.S.C. § 1681(a) provides, in pertinent part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...

Title IX grants a private right of action for both injunctive relief and monetary damages against a recipient of federal funds. *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 72-73 (1992); *Cannon v. University of Chicago,* 441 U.S. 677, 688-89 (1979).

The Supreme Court has expressly rejected the use of "principles of respondeat superior or constructive notice" for imposing liability on a funding recipient under Title IX. *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 285 (1998). *See also Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642 (1999). In order to hold a funding recipient liable for damages under Title IX, a plaintiff must demonstrate that an "appropriate person" within the funding recipient had actual notice of the harassment and was deliberately indifferent to it. *Gebser*, 524 U.S. at 292-293. An "appropriate person" for Title IX purposes is, at a minimum, an official of the funding recipient with authority to take corrective action to end the discrimination. *Gebser*, 524 U.S. at 290.

If the federal funding recipient did not engage in harassment directly, it is not liable for damages unless its deliberate indifference subjects its students to harassment, either by causing them to undergo harassment or make them liable or vulnerable to it. *Davis*, 526 U.S. at 644-45.

11

Moreover, since the harassment must occur under the operations of a funding recipient, the harassment must occur in a context subject to the school's control. *Id.* Additionally, in order to recover damages, the harassment must have been "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650.

Deliberate indifference occurs when an official who, at a minimum, has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf, has actual knowledge of the discrimination and fails adequately to respond. *Gebser*, 524 U.S. at 290. An official's response or lack thereof is inadequate when it is clearly unreasonable in light of the known circumstances. *Davis*, 526 U.S. at 648. Courts may determine, as a matter of law, whether a response was "clearly unreasonable." *Id.*, at 649.

### C. 42 U.S.C. § 1983

#### 1. Generally

Plaintiff alleges violations of her rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 17. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S.

12

42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000), *citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*.

### 3. Individual Capacity Claims

As an initial matter, §1983 liability cannot be predicated upon the theory of *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996). In order for Defendants to be held liable in their individual capacities, therefore, Plaintiff must demonstrate that the individual Defendants personally condoned, encouraged, or participated in the conduct that allegedly violated Plaintiff's rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir.

13

1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984), *citing Hays v. Jefferson County,* 668 F. 2d 869, 872-74 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

### D. The Case at Bar

Addressing first Plaintiff's official capacity § 1983 claims, Defendant TTU and its employees stand in the shoes of the State of Tennessee. The law is well-settled that a state is not a "person" within the meaning of § 1983. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Clark v. Kentucky*, 229 F.Supp.2d 718, 722 (E.D. Ky. 2002). Moreover, Eleventh Amendment immunity protects states, as well as state officials in their official capacities, from being sued in federal court for money damages (*Boler v. Early*, 865 F.3d 391, 409-10 (6th Cir. 2017)), and no exceptions to Eleventh Amendment immunity are applicable in the case at bar. Accordingly, Plaintiff cannot maintain her § 1983 official capacity claims against Defendants and those claims should be DISMISSED WITH PREJUDICE.

Turning next to Plaintiff's individual capacity § 1983 claims, in order to prevail on her § 1983 claims, Plaintiff must establish that the individual Defendants personally condoned, encouraged, or participated in the conduct that allegedly violated Plaintiff's rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). Although Plaintiff argues that

14

Defendants violated her due process rights by failing to follow their own policies and procedures, failing to adequately conduct the sexual assault investigation, taking two years to complete the investigation, failing to keep her informed as to the status of the investigation, and failing to take any disciplinary action against her assailant, Plaintiff's allegations are conclusory. The allegations of Plaintiff's Second Amended Complaint, taken as true, simply do not demonstrate that Defendants violated her due process rights. Plaintiff therefore cannot establish the requisite underlying constitutional violation. Absent a constitutional violation, Plaintiff cannot maintain her § 1983 individual capacity claims against Defendants those claims should be DISMISSED WITH PREJUDICE.

Regarding Plaintiff's Title IX claims, as an initial matter, Title IX does not provide for the imposition of individual liability; rather, Title IX applies to recipients of federal funds. *See Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999). Because the individual Defendants are not themselves recipients of federal funds, they cannot be held liable, and Plaintiff's Title IX claims against them should be DISMISSED WITH PREJUDICE. With respect to Plaintiff's Title IX claims against TTU, taking the allegations of Plaintiff's Second Amended Complaint as true, Plaintiff was informed of her right to file an administrative complaint with the University; Plaintiff later did, in fact, file her administrative complaint with the University; the University conducted an investigation, interviewing Plaintiff and her assailant separately and interviewing Plaintiff a second time to ask follow-up questions; and the University wrote a thirteen page report regarding its findings and conclusions about its investigation. Docket No. 17. Plaintiff's Second Amended Complaint also establishes that Plaintiff had regular communication and multiple meetings with University employees regarding, *inter alia*, her attack, the investigation, her PTSD and other psychological

15

effects, and her declining grades and resultant financial aid difficulties. *Id*.

Although Plaintiff is upset by the questions posed to her during her interview and follow-up interview, and upset that the University did not initiate disciplinary proceedings against her assailant, the University's choice of questioning and decision not to discipline her assailant simply do not constitute deliberate indifference, particularly in light of the aforementioned facts and circumstances. Moreover, although Plaintiff argues that the length of time between when she filed her complaint and when the University concluded its investigation and issued its investigative report was excessive and evidences the University's deliberate indifference, taking the allegations of Plaintiff's Second Amended Complaint as true, Plaintiff's allegations establish that, from the time the University learned of Plaintiff's August 26, 2015 off-campus sexual assault until the time Ms. Hall and Mr. Owens conducted their follow-up interview of her on May 16, 2016, Plaintiff, her counsel, and University employees were in regular communication, the University was responding to Plaintiff's allegations, and the University was conducting its investigation. *Id*. The allegations of Plaintiff's Second Amended Complaint further establish that from January 11, 2017 through the issuance of the University's thirteen page investigative report and subsequent refusal to mediate Plaintiff's claims, the University had concluded its investigation and Plaintiff, her counsel, and University employees were again in regular communication. *Id*. While there are no allegations in the record concerning what, if anything, may have occurred between May 16, 2016 and January 11, 2017, given the level of involvement Plaintiff herself avers the University had in responding to, and investigating, her sexual assault allegations and resultant PTSD, anxiety, declining academic performance, and loss of financial aid, the undersigned cannot say that the lack of allegations during this seven month period is sufficient to constitute deliberate indifference as a matter of law,

16

particularly in light of no allegation of continued harassment by her assailant.[3]

Because the allegations of Plaintiff's Second Amended Complaint do not demonstrate that the University was deliberately indifferent to Plaintiff's peer-assault and harassment, Plaintiff cannot sustain her Title IX claim against the University and those claims should be DISMISSED WITH PREJUDICE.

As to Plaintiff's pendent state law claims, because the undersigned recommends that the instant Motions to Dismiss be granted, the undersigned further recommends that this Court should decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims; those claims should be dismissed without prejudice. *See United Mine Workers of America v. Gibbs*, 383 U.S.

---

[3] In fact, the only allegation of post-notification harassment Plaintiff avers in her Second Amended Complaint is as follows:

> Several months after the February 25 [no contact order] email was sent, Plaintiff entered the TTU library, where she saw [her assailant] staring at her. According to [Plaintiff], she began to panic, but could not leave because she was meeting a study group. Plaintiff found her study group and sat with them, where she tried to engage in the course work, but [her assailant] remained staring at her and loudly speaking to his friends in Arabic for nearly a half an hour before departing the library. *Plaintiff never reported this incident to anyone at the school* because, according to Plaintiff, Defendant Hall had given her the impression that both [Plaintiff and her assailant] had "no contact" orders for each other, and [Plaintiff] feared that she could be reprimanded for entering the library when [her assailant] was already there.

Docket No. 17, p. 11 (emphasis added).
 Significantly, Plaintiff acknowledges never reporting this incident to anyone at the University. The University cannot be deliberately indifferent to that of which it is unaware and would have no reason to be aware. Accordingly, as far as the University was aware, the *only* incident of Plaintiff's averred peer-on-peer harassment was the off-campus sexual assault that set in motion the chain of events leading to the filing of this action.

17

715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

### III. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 24) be GRANTED, that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge