**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **SARAH BETH CAIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2:17-cv-00055** |
| **v.** | ) | **CHIEF JUDGE CRENSHAW** |
| | ) | **MAGISTRATE JUDGE FRENSLEY** |
| **TENNESSEE TECHNOLOGICAL** | ) | |
| **UNIVERSITY, MARC BURNETT,** | ) | **JURY DEMANDED** |
| **individually and in his official capacity,** | ) | |
| **KATHERINE WILLIAMS, individually** | ) | |
| **and in her official capacity, ROBERT** | ) | |
| **OWENS, individually and in his official** | ) | |
| **capacity, KAE CARPENTER, individually** | ) | |
| **and in her official capacity, MARLENE** | ) | |
| **HALL, individually and in her official** | ) | |
| **capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE
JUDGE'S SECOND REPORT AND RECOMMENDATION**

_____

Defendants Tennessee Technological University ("TTU" or the "University"), and Marc
Burnett, Katherine Williams, Robert Owens, Kae Carpenter, and Marlene Hall, in their individual
and official capacities, pursuant to Fed. R. Civ. P. 72, respond to Plaintiff's Objections to the
Report and Recommendation ("Objections"). In the Report and Recommendation issued on May
28, 2019 ("R&R"), the Magistrate Judge again recommended that Defendants' Motion to Dismiss
be granted and that this action be dismissed with prejudice. (ECF No. 49, p. 45). For the reasons
explained below, Plaintiff's Objections should be overruled, the Report and Recommendation
should be adopted in full, and this action should be dismissed in its entirety.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, where a party has objected to portions of a report and recommendation regarding a dispositive motion, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

## LAW AND ARGUMENT

### I. THE COURT SHOULD NOT CONSIDER THOSE ALLEGATIONS PLAINTIFF RELIES ON IN HER OBJECTIONS BUT FAILED TO INCLUDE IN THE SECOND AMENDED COMPLAINT.

In her Objections, Plaintiff alleges new facts and makes assertions unsupported by the existing facts. (*See, e.g.*, ECF No. 52 at p. 11 (Defendants did not notify Respondent of the allegations against him for at least three months after Plaintiff filed her administrative complaint); (Defendants did not begin investigating Plaintiff's allegations against Respondent until at least three months after she filed her administrative complaint); (Defendants knew Plaintiff was highly distressed over the investigation[1]; p. 12 ("Defendants' [*sic*] clearly abandoned the investigation"); p. 13 (Defendants refused to supply Plaintiff with information that she requested about the investigation[2]); and p. 14 (the University made "continuous empty promises [to Plaintiff that it would] notify Respondent of the [complaint] against him[3]). In deciding whether the Second Amended Complaint ("SAC") contains sufficient factual allegations to plead Title IX, Due Process Clause, and Equal Protection Clause violations, the Court should not consider unsupported and

---

[1] In the Second Amended Complaint, Plaintiff alleges that she conveyed to Defendant Hall "her mounting anxiety and emotional distress *caused by the assault.*" (ECF No. 17, ¶ 27) (emphasis added).

[2] The Second Amended Complaint's facts undercut this claim. For one, Plaintiff pleads that Defendant Hall declined to answer her questions over other sources of allegations against Respondent, not that Hall generally refused to respond to Plaintiff's inquiries. (ECF No. 17, ¶ 24.) The pleadings also show that Defendant Carpenter promptly replied to emails from Plaintiff's attorney. (ECF No. 17, ¶¶ 31-32.)

[3] The Second Amended Complaint directly contradicts this assertion, as it recounts an email exchange between Plaintiff and Hall in which Hall states that Respondent was notified of the allegation against him in February. (ECF No. 17, p. 11.)

2

conclusory allegations in briefs that were not in the pleadings. *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (noting that documents "referred to in the pleading[s]" and "integral to the claims" may be considered in deciding a 12(b)(6) motion). Facts first alleged in Plaintiff's Objections thus fall outside the scope of reviewable material when ruling on Defendants' Motion to Dismiss.

## II.   PLAINTIFF'S OBJECTION THAT THE REPORT AND RECOMMENDATION STRAYED FROM THE LEGAL STANDARD GOVERNING RULE 12(B)(6) MOTIONS IS UNFOUNDED AND SHOULD BE OVERRULED.

Plaintiff takes issue with the R&R's application of the legal standard governing Rule 12(b)(6) motions and raises an objection in this regard. Plaintiff objects to the R&R's discussion of the alleged facts, arguing that the R&R does not construe alleged facts in the light most favorable to the nonmoving party. (ECF No. 52, p. 5-6.) In support of her contention, Plaintiff relies on two passages. (*Id.* at 6.)

The first passage appears on pages 37-38 of the R&R and summarizes information obtained from the University's Investigation Memorandum. Plaintiff claims that this passage is misleading because it suggests that TTU independently obtained certain documents related to her sexual assault complaint, when in fact the University obtained those documents from her. *Id.* But this is a distinction without a difference, as how the University gathered certain documents as part of its investigation is irrelevant to the Magistrate Judge's analysis of Plaintiff's claims.

The second passage is an excerpt from the SAC, some of which has been italicized for emphasis. *Id.* Plaintiff appears to believe that italicizing a fact runs afoul of the Court's obligation to construe the facts in the light most favorable to the nonmoving party. But Plaintiff is wrong. The *Iqbal*/*Twombly* standard requires courts to distinguish between factual allegations and legal conclusions and employ their experience and common sense to determine whether the complaint

3

states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This standard does not prevent courts, when ruling on a motion to dismiss, from italicizing or otherwise emphasizing critical facts. Plaintiff's objection to the R&R's italicization of a fact she pled is meritless and should be overruled.

## III. THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DISMISSAL OF PLAINTIFF'S § 1983 CLAIMS AGAINST THE UNIVERSITY AND UNIVERSITY EMPLOYEES SUED IN THEIR OFFICIAL CAPACITIES.

The Magistrate Judge correctly determined that Plaintiff cannot maintain § 1983 claims against TTU or its employees sued in their official capacities. Plaintiff resists this conclusion not by challenging or distinguishing the R&R's legal authorities on this point but by presenting a straw man argument. (*See* ECF No. 52, p. 9-10 ("The Report [and Recommendation] does not cite any authority which would indicate that 'no exceptions to Eleventh Amendment Immunity are applicable to this case'")).

Whether Plaintiff has stated a § 1983 claim against the University and certain University employees in their official capacities is not strictly an immunity issue. While it is true that Congress did not intend 42 U.S.C. § 1983 to abrogate the States' Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 345 (1979), the Supreme Court has further held that the state is not a "person" within the meaning of § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). The University is thus not susceptible to suit under § 1983. The same is true for University employees sued in their official capacities. Because a suit against a state employee in his official capacity is equivalent to a suit against the State itself, the R&R correctly recommends dismissal of those official capacity § 1983 claims against TTU employees Carpenter, Hall, and Owens. *See Moore v. City of Harriman*, 272 F.3d 769, 776 (6th Cir. 2001) (holding that an official capacity claim against a state employee is no different that a suit against the State).

4

## IV. DISMISSAL OF PLAINTIFF'S INDIVIDUAL CAPACITY § 1983 CLAIMS AGAINST DEFENDANTS CARPENTER, HALL, AND OWENS IS PROPER.

### A. The Magistrate Judge Correctly Determined that Plaintiff Failed to Allege Non-Conclusory Facts Showing that Defendants Carpenter, Hall, and Owens Violated the Due Process Clause.

Plaintiff's constitutional claims rely on assertions of due process. (ECF No. 17, ¶¶ 51-58.) The Due Process Clause protects individuals against certain actions by the government. *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997). Substantive due process limits governmental deprivations of life, liberty, or property, regardless of procedure. *Shoemaker v. City of Howell*, 795 F.3d 553, 564 (6th Cir. 2015). Procedural due process guarantees "the government [must] provide a 'fair procedure' when depriving someone of life, liberty, of property." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). To establish a procedural due process claim[4], Plaintiff must show that: (1) she had a life, liberty, or property interest protected by the Due Process Clause; (2) Defendants deprived her of this protected interest; and (3) Defendants did not afford her adequate procedural rights prior to deprivation of this protected interest. *Women's Med. Prof'l Corp. v. Baird*, 483 F.3d 595, 611 (6th Cir. 2006).

The SAC alleges that, after Respondent sexually assaulted her at her off-campus apartment, Defendants Carpenter, Hall, and Owens deprived her of her due process rights by failing to: follow the University's policies and procedures concerning complaints of sexual harassment; adequately investigate her allegations against Respondent; keep her sufficiently informed of the investigation's status; and discipline Respondent. (ECF No. 17, ¶¶ 51-55.) To the extent

---

[4] Plaintiff contends that the Magistrate Judge misunderstood her due process claims and explains that she is asserting procedural and substantive due process violations. (ECF No. 52, p. 7-8.) To the extent that Plaintiff's substantive due process claim is based on Defendants' purported disparate treatment of her and Respondent during the investigation, the claim is analyzed in Section IV.B. as an equal protection violation.

Plaintiff's due process claim is premised on the notion that she had a constitutional or statutory right either to a thorough investigation or an investigation compliant with TTU's Sexual Misconduct Policy, the claim fails.

Plaintiff provides no authority for the proposition that the Due Process Clause requires certain levels of thoroughness or communication during an investigation. Nor does Plaintiff offer authority supporting her position that the Due Process Clause requires certain disciplinary actions following an investigation. Equally problematic for Plaintiff, she does not dispute the authorities on page 35 of the R&R, which teach that state universities do not have a federal due process obligation to follow their internal policies and procedures. (*See* ECF No. 52, pp. 15-18.) The aim of due process is a fair process, meaning that "[t]he Due Process Clause does not require a particular kind of investigation," *Nguyen v. Univ. of Louisville*, No. CIV.A. 3:04-CV-457-H, 2006 WL 1005152, at *4 (W.D. Ky. Apr. 14, 2006), but instead "notice and an opportunity to be heard by a neutral decisionmaker," *Chambers v. Tenn. Bd. of Regents*, No. 2:16-cv-02851-JPM-dkv, 2017 WL 3218075, at *11 (W.D. Tenn. July 28, 2017). Plaintiff does not challenge the neutrality of the decisionmaker, and the alleged facts demonstrate that Plaintiff had ample opportunity to be heard during the University's investigation. Plaintiff was informed of her right to file an administrative complaint against Respondent, which she later did. (ECF No. 17, ¶¶ 18-20, 22.) Plaintiff then met with Title IX Coordinator Hall on multiple occasions, corresponded with University representatives by phone and email, provided Hall with her written statement and other documents related to her complaint, sat for two interviews with Hall, and was represented by counsel for a significant portion of this process. (ECF No. 17, ¶¶ 6, 18-29, 31-35.)

In the Objections, Plaintiff attempts to recast her due process claim. Plaintiff argues, without reasoning or authority, that she has a right to the University's educational benefits and a

right "to acquire useful knowledge." (ECF No. 52, p. 16.) She further argues that these rights were compromised because she feared the possibility of seeing Respondent on campus. (*Id.*) Essentially, Plaintiff contends that she has a right, protected by the Due Process Clause, to access university resources and acquire knowledge without fear of *potential* on-campus sightings of Respondent. This attempt to state a due process violation also fails.

Plaintiff offers no legal support for her position that she has the right, following an off-campus incident of student-on-student sexual assault, to be free from the possibility of seeing her attacker or free from residual assault-based trauma. In fact, the Sixth Circuit considered whether Title IX affords such rights and held that it does not. *M.D. by & through Deweese v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 777-78 (6th Cir. 2017) (holding no Title IX violation where school implemented a successful no contact policy, but the plaintiff nevertheless felt anxiety from seeing her attacker on campus). *M.D.* teaches that funding recipients must act reasonably to prevent further harassment but are not required to eliminate a harassment victim's fears or anxieties flowing from the initial harassing incident. *Id.* In the instant case, the alleged facts establish that the University directed Respondent to have no contact with Plaintiff, and this directive successfully prevented any further interactions between them. (*See* ECF No. 17, ¶¶ 13-50). Since the Due Process Clause does not guarantee that Plaintiff could access educational resources and acquire knowledge without fear of seeing Respondent on campus, Plaintiff's due process claims against Carpenter, Hall, and Owens must be dismissed.

### B. The Magistrate Judge Correctly Found that Plaintiff Failed to Allege Essential Elements of an Equal Protection Claim.

The Magistrate Judge properly recommended dismissal of Plaintiff's equal protection claim because the SAC contains no allegations pertaining to two of the three required elements of the claim. Plaintiff concedes that she has failed to plead that she is a member of a protected class

7

and that Defendants Carpenter, Hall, and Owens intentionally discriminated against her because of her membership in that protected class. (*See* ECF No. 52, p.18). This concession is fatal to her claim and should end the inquiry. Defendants will nevertheless analyze Plaintiff insistence that these deficiencies do not warrant dismissal of her claim because the alleged facts support a "reasonabl[e] inference that her Equal Protection claims are based on sex discrimination." (*Id.*)

Assuming that Plaintiff is correct, she still fails to state an equal protection violation because she has not alleged facts showing that each of the three individual capacity defendants—Carpenter, Hall, and Owens—intentionally discriminated against her because of her sex. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (explaining that the pleading standard for § 1983 claims requires plaintiffs to "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right") (emphasis in original). This pleading standard requires that Plaintiff allege facts indicating that Carpenter, Hall, and Owens each treated her differently than similarly situated male students because of her sex. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 571 (6th Cir. 2011) (discussing the pleading standard for Equal Protection Clause violations). But the SAC contains no discussion of how Carpenter treated Respondent or other male students. (*See generally* ECF No. 17.) While the SAC states that Hall and Owens met with Plaintiff twice over the course of the investigation and met with Respondent once, there are no facts stating or suggesting that this difference was motivated by Plaintiff's sex. (*See generally id.*) Instead, the stated reason for the second meeting, which at the motion to dismiss stage is presumed to be true, was to address "follow-up questions which arose during [Hall and Owens'] interview with Respondent." (ECF No. 17, ¶ 32.) Because Plaintiff has not alleged facts establishing that Carpenter, Hall, and Owens treated her differently from male students because she is female, her attempt to state an Equal Protection Clause violation fails.

8

## V. THE MAGISTRATE JUDGE IS RIGHT TO CONCLUDE THAT PLAINTIFF'S TITLE IX CLAIMS FAIL AS A MATTER OF LAW.

### A. The Magistrate Judge Correctly Determined that Plaintiff Cannot Maintain Title IX Claims Against TTU Employees in Their Individual Capacities.

The Magistrate Judge correctly concludes that Plaintiff's attempt to sue Defendants Carpenter, Hall, and Owens in their individual capacities for alleged Title IX violations fails because there is no individual liability under Title IX. Plaintiff raises three objections to this portion of the R&R, arguing that: Title IX is enforceable through an implied private right of action; Title IX is not the exclusive mechanism for challenging gender discrimination in schools; and the R&R improperly "confer[s] upon Defendants different roles" when analyzing different issues. (ECF No. 52, p. 10-11.) According to Plaintiff's third objection, if Defendants are considered public entities for § 1983 purposes, they must also be considered public entities under Title IX. (*Id.* at p. 11.) All three objections are meritless. The first two objections do not address the issue at hand, i.e., whether employees of an educational institution can be personally liable under Title IX. The third objection shows that Plaintiff fails to appreciate that the legal standard applicable to official capacity claims is distinct from that governing individual capacity claims. Since Plaintiff does not challenge the R&R's conclusion that Title IX claims cannot be maintained against individuals, only against recipients of federal funds, (ECF No. 49, p. 40 (citing *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999))), her objections on this issue should be overruled, and the Title IX claims against Carpenter, Hall, and Owens in their individually capacities should be dismissed.

### B. The Magistrate Judge Correctly Concluded that the Facts Contained in the Second Amended Complaint and Investigation Memorandum Show that the University Did Not Act with Deliberate Indifference.

The Magistrate Judge properly determines that factual content found in the SAC and Investigation Memorandum do not warrant an inference that the University made an official

decision not to remedy an incident of student-on-student sexual harassment. Plaintiff objects to this conclusion and provides four illustrations of the University's deliberate indifference. All four are fatally flawed.

First, Plaintiff asserts that the University did not notify Respondent of her allegations against him for at least three months after she filed her administrative complaint. (ECF No. 52, p. 11.) The relevant facts do not support this assertion. The SAC is silent on the issue of when Respondent learned of Plaintiff's complaint; it speaks only to when Defendants Hall and Owens interviewed him. (*See* ECF No. 17.) Moreover, the SAC and Investigation Memorandum reveal that TTU Police were charged with enforcing a protective order against Respondent beginning September 30, 2015, approximately two weeks before Plaintiff decided to formally file a complaint. (ECF No. 17, ¶ 17; ECF No 41, p. 46.) The University's successful implementation of the protective order—Plaintiff admits that she had no contact with Respondent on or after TTU Police received notice of the protective order on September 30, 2015[5]—supports the inference that campus police informed Respondent of the allegations against him and resulting protective order.

Plaintiff next cites the University's failure to "begin an investigation for at least months after [her] complaint was filed" as evidencing deliberate indifference. (ECF No. 52, p. 11.) This contention is also contradicted by the facts. The SAC demonstrates that Defendant Hall commenced her investigation immediately after Plaintiff notified her on November 11, 2015, that Plaintiff desired to move forward with administrative action. According to Plaintiff's own words, she met with Hall on November 12, 2015, "to recount the details of her rape and file the administrative complaint." (ECF No. 17, ¶¶ 22-23.) After about three weeks of "correspond[ing] regularly" with Hall, Plaintiff and Hall met again; this time, Defendant Owens participated in the

---

[5] *See* ECF No. 17, ¶¶ 16-71.

meeting.  (*Id.* at ¶¶ 25-26.)  A plain reading of the SAC shows that TTU began its investigation immediately after Plaintiff requested administrative action, starting with Hall's interview of Plaintiff on November 12, 2015.  (*Id.* at ¶¶ 22-23.)  Because Plaintiff's assertion of a three-month delay has no basis in fact, it must be rejected.

Third, Plaintiff points to the amount of time required for the investigation to conclude and for Plaintiff to receive a copy of the Investigation Memorandum as indicative of deliberate indifference.  (ECF No. 52, p. 11-13.)[6]  Plaintiff contends that the length of time required to complete the investigation and the University's failure to explain why the investigation took as long as it did allow a reasonable inference of deliberate indifference.  (*Id.* at 12-13.)  Plaintiff relies on a Letter of Findings issued to Washington State University by the U.S. Department of Education's Office for Civil Rights ("OCR") to reach this conclusion.  (*Id.*)

Plaintiff's reliance on conclusions made after an OCR investigation is misplaced.  In contrast to a Title IX investigation conducted by OCR, the issue here, where a private party seeks to enforce Title IX, is whether the complainant has pled non-conclusory facts evidencing a funding recipient's deliberate indifference to a complaint of sexual harassment.  As the Magistrate Judge recognized, such an inquiry requires consideration of the totality of the funding recipient's response.  (ECF No. 49, p. 42-45); *see, e.g.*, *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 374-77 (5th Cir. 2019) (discussing all aspects of the school's response, including the delayed investigation, when deciding that the school's conduct did not constitute deliberate indifference); *Keel v. Del. State Univ. Bd. of Trs.*, No. 17-1818-MN-SRF, 2018 U.S. Dist. LEXIS 199387, at *10-*14 (D. Del. Nov. 26, 2018) (analyzing the University's purported "unjustifiable delay in

_____

[6] This portion of Plaintiff's objections contain assertions untethered to any facts in the SAC or Investigation Memorandum, e.g., the University "turn[ed] its back [on the investigation] for months at a time," (ECF No. 52, p. 11), and "Defendants clearly abandoned the investigation," (*id.* at p. 12). These unsupported statements should be disregarded.

investigating and adjudicating [complainant's] reports of rape and ongoing harassment" in light of all other elements of its response to determine facts pled did not amount to deliberate indifference). When considering the totality of the University's response—successfully enforcing a restraining order; explaining to Plaintiff the options she had on and off campus; meeting with Plaintiff on several occasions <u>before</u> she decided to file an administrative complaint; obtaining a written statement from Plaintiff; conducting initial and follow-up interviews of Plaintiff; interviewing Respondent and two additional witnesses; advising Plaintiff of resources for academic and emotional support; reviewing communications, court records, and medical records related to Plaintiff's allegations against Respondent; and implementing interim measures that ensured no further contact between Plaintiff and Respondent (ECF No. 17, ¶¶ 17-43 ; ECF No. 41, p. 46-56)— it is clear that TTU cannot be said to have made "an official decision . . . not to remedy the violation." *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Keel*, 2018 U.S. Dist. LEXIS 199387 at *18 (explaining that the plaintiff's Title IX deliberate indifference claim failed because the complaint made clear that the university "did act on Plaintiff's claims regarding her assault").

Lastly, Plaintiff contends that the University's response demonstrated deliberate indifference because it "caused [her] to be vulnerable to further harassment." (ECF No. 52, p. 14.) The SAC admits that after the assault, Plaintiff had no on-campus interactions with Respondent. (ECF No. 17, ¶¶ 16-71.) Plaintiff thus argues that Respondent's <u>mere</u> "presence on campus was harassing because it created the possibility that she may see him." (ECF No. 52, p. 14.) According to this line of reasoning, the only way TTU could avoid liability for making Plaintiff "liable or vulnerable to future harassment" would be to immediately remove Respondent from campus, i.e., to suspend or expel him. Both the Supreme Court and the Sixth Circuit have held that Title IX

12

does not require funding recipients to take such action. In *Davis*, the Supreme Court expressly rejected Plaintiff's argument that "nothing short of expulsion of every student accused of misconduct . . . protect[s] school systems from liability," opining that Title IX does not give victims of peer harassment "the right to make remedial demands." 526 U.S. at 648. In a recent decision applying *Davis*, the Sixth Circuit held that no Title IX violation occurred where, in response to allegations of sexual assault, the school district: obtained a confession from the assailant; disciplined him; implemented a no contact order; and thereafter allowed the assailant to return to the same campus as the plaintiff. *M.D.*, 709 F. App'x at 776-77. The Sixth Circuit explained that "[t]o hold otherwise would effectively foreclose remedial measures short of expulsion and undermine the 'flexibility' that the *Davis* Court took care to guard." *M.D.*, 709 F. App'x at 777-78 (citing *Davis*, 526 U.S. at 648-49). Because the Respondent's presence on campus, albeit under a no contact order, cannot be a basis for establishing deliberate indifference, this objection to the R&R must be overruled.

## CONCLUSION

For the reasons stated herein, the University and Marc Burnett, Katherine Williams, Robert Owens, Kae Carpenter, and Marlene Hall, in their individual and official capacities, respectfully request that the Court enter an order adopting the R&R in full and dismissing Plaintiff's claims with prejudice.

Respectfully submitted,

**HERBERT H. SLATERY III**
**ATTORNEY GENERAL AND REPORTER**


*s/* Colleen E. Mallea
Assistant Attorney General
Education and Employment Division
P.O. Box 20207

13

Nashville, TN 37202-0207
Telephone: (615) 741-2472
Facsimile: (615) 741-7327
colleen.mallea@ag.tn.gov
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation was filed electronically on July 15, 2019. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. A true and correct copy of the foregoing was also sent via U.S. Mail to:

Sarah Beth Cain
500 Dry Valley Road
Apt. E306
Cookeville, TN 38506