# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### COOKEVILLE DIVISION

| | | |
|---|---|---|
| **SARA BETH CAIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 2:17-cv-00055** |
| **v.** | ) | |
| | ) | |
| **TENNESSEE TECHNOLOGICAL** | ) | |
| **UNIVERSITY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This *pro se* action arises from an alleged sexual assault. Sara Beth Cain has sued Tennessee Technological University ("TTU"), Marc Burnett, Katherine Williams, Robert Owens, Kae Carpenter, and Marlene Hall ("Defendants") under 42 U.S.C. § 1983, Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"), and Tennessee tort law. Specifically, Cain alleges:

(1) TTU and Carpenter, Hall, and Owens, individually, and in their official capacities, violated her rights under Title IX by discriminating against her and effectively depriving her of the educational opportunities and benefits provided by TTU due to their deliberate indifference to student-on-student harassment;

(2) TTU and Carpenter, Hall, and Owens, individually, violated her due process and equal protection rights under the U.S. Constitution and Section 1983 by failing to follow TTU's policies and procedures when they did not adequately or timely conduct and complete the sexual assault investigation and disciplinary process;

(3)  Hall and Owens, individually, caused intentional infliction of emotional distress by questioning her in an accusatory and traumatic manner despite knowing of her post-attack mental health condition; and

(4)  Hall, Carpenter, Williams, Owens, and Burnett individually caused negligent infliction of emotional distress[, arising out of] the manner in which TTU conducted its investigation and enforced TTU's policies and procedures.

Before the Court is a Report and Recommendation (Doc. No. 49) in which the Magistrate Judge recommends that the Court grant Defendants' Motion to Dismiss (Doc. No. 24.)  The Magistrate Judge recommends that the Title IX claims against the individual Defendants be dismissed because Title IX does not provide for individual liability (Id. at 40) and that the Title IX claim against TTU be dismissed because TTU was not "deliberately indifferent" to her complaint of sexual assault. (Id. at 42-44.) On the § 1983 claims, the Magistrate Judge recommends that Hall, Owens, and TTU, be dismissed because they are not proper defendants (Id. at 36); that Cain's claims against Hall and Owens, individually, be dismissed because the allegations are "conclusory" and TTU gave her sufficient opportunities to be heard and to meaningfully participate in the investigation process. (Id. at 39.)  Finally, the Magistrate Judge recommends that the Court decline to exercise supplemental jurisdiction over Cain's state law claims. (Id. at 45.) Cain has filed objections challenging factual inferences and legal conclusions reached by the Magistrate Judge. (Doc. No. 54.)

The Court reviews the Magistrate Judge's conclusions *de novo*.  For the following reasons, the Report and Recommendation will be adopted in part and set aside in part, the motion to dismiss will be granted, and the case will be dismissed.

2

## I.   Legal Standard

The legal standard for a Rule 12(b)(6) motion is well established. In short, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557.) The Court construes the Complaint in the light most favorable to the non-moving party, accepts its allegations as true, and draws all reasonable inferences in favor of the nonmoving party. Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The Court is not required to accept summary allegations, legal conclusions, or unwarranted factual inferences. Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999); Lillard v. Shelby Cty. Bd. Of Educ., 76 F.3d 716, 726 (6th Cir. 1996).

## II.   Facts

TTU is a public university located in Cookeville, Tennessee, that accepts federal funding. (Doc. No. 17 at ¶¶ 4, 12.) Cain, a resident of Tennessee, was a full-time student at TTU. (Id. at ¶ 4.) At TTU, allegations of sexual misconduct are governed by the policies and regulations in TTU Policy 143: Sexual Misconduct ("Policy").[1] (Id. at ¶ 45; Doc. No. 41 at 17-45.)

---

[1] Defendants objected to consideration of the Policy on the grounds that it was untimely produced. (Doc. No. 43.) The Court rejected this argument. (Doc. No. 48.) Cain explicitly referenced the Policy in the Amended Complaint (Doc. No. 17 at § 45), and subsequently attached the lengthy Policy itself to her Objections (Doc. No. 41 at 17-45). Defendants have not contested the authenticity of the Policy. (Doc. Nos. 43, 53.) As a general rule, "matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under [Federal Rule of Civil Procedure] 56." Weiner v. Klais & Co., 108 F.3d 8, 88 (6th Cir. 1997). However, in deciding a motion to dismiss a district court may consider documents referenced in the pleadings that are "integral to the claims." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007). The Court has previously found the Policy to be integral to Cain's claims and that Cain, acting *pro se*, had

3

A.     The Sexual Misconduct Policy

The Policy governs the reporting, investigation, and punishment of all forms of sexual misconduct, including sexual assault. (Doc. No. 41 at 19-20.) The Policy specifies that TTU "will take ongoing steps to protect the complainant from retaliation or harm and work with the complainant to create a safety plan." (Id. at 31.) This involves, to the extent practicable, "[a]ssist[ing] the complainant in accessing other available victim advocacy, academic support, counseling, disability, health or mental health services, and legal assistance both on and off campus"; "[p]rovid[ing] other security and support, which could include issuing a no-contact order"; and "[i]nform[ing] the complainant of the right to report a crime to campus or local law enforcement and provide assistance if the complainant wishes to do so." (Id.)

Under the Policy, TTU's Title IX Coordinator is responsible for overseeing all sexual misconduct incidents reported to TTU and for the implementation of the Policy, including investigation of sexual misconduct allegations. (Id. at 32.) The Policy states that all investigative proceedings "will include a prompt, fair, and impartial investigation and result." (Id. at 33.) Under the policy, "within one (1) business day of receipt of a report of sexual misconduct from a complainant . . . , the Title IX Coordinator or designee shall attempt to get a written statement from the complainant that includes information related to the circumstances giving rise to the complaint, the dates of the alleged occurrences, and names of witnesses, if any." (Id.) At that time, "the

---

diligently pursued her case. (See Doc. No. 48). This very type of document is often considered on motions to dismiss claims concerning university disciplinary matters, and this Court has considered sexual misconduct policies in similar circumstances. See Z.J. v. Vanderbilt Univ., 355 F. Supp. 3d 646, 659 n.2 (M.D. Tenn. Dec. 19, 2018) (considering Sexual Misconduct Policy and Final Investigative Report in deciding motion to dismiss Title IX and state law claims concerning misconduct investigation); Doe v. Belmont Univ., 334 F. Supp. 3d 877, 887 n.2 (M.D. Tenn. 2018) (considering Sexual Misconduct Policy and final Determination Letter in deciding motion for judgment on the pleadings of state law claims concerning misconduct investigation).

4

complainant may fill out a complaint form or submit a detailed written report of the alleged incident."[2] (Id.) "[I]f the Title IX Coordinator determines that the complaint contains an allegation of sexual misconduct, the Title IX Coordinator shall follow the procedures set forth in [the Policy] to investigate and adjudicate the complaint." (Id. at 34.)

The Policy sets forth specific procedures to be followed. (Id. at 34-35.) These include that: (1) "[t]he complainant and respondent shall be provided with the same opportunities to have others present during any interview, including the opportunity to be accompanied by the advisor of their choice to any related meeting or proceeding"; (2) "[TTU] will not limit the choice of advisor for either the complainant or respondent"; (3) "[t]he investigation shall include interviews with relevant witnesses named by the complainant and respondent or any other potential, relevant witness made known to the investigator"; (4) "[t]he investigation shall include the gathering and reviewing of any documentary, electronic, physical, or other type of relevant evidence"; and (5) "[t]he investigator is expected to request a list of relevant witnesses and evidence from complainant and respondent and take such into consideration." (Id. at 35.)

Under the Policy, "[e]very reasonable effort shall be made to conclude the investigation and resolve the complaint within sixty (60) calendar days following receipt of the complaint." (Id. at 36.) "Within this sixty (60) day timeframe, absent good cause, it is expected that": (1) the investigator will conclude the investigation, (2) the investigator will present a report to the Vice President for Student Affairs, and (3) the investigator will notify the parties in writing of the Vice President's determination. (Id.) The Policy requires that "[i]f the investigator or Vice President

---

[2] When the complainant chooses not to provide or sign a written complaint, the Title IX Coordinator or designee will investigate to the extent possible and take appropriate action. (Doc. No. 41 at 33.)

5

determines that additional time is needed, both parties shall be notified in writing of the delay, the anticipated date that the investigation will be concluded, and the reasons for such delay." (Id.)

The written report shall include the allegations made by the complainant, the response of the respondent, corroborating or non-corroborating statements of the witnesses, review of other evidence obtained, conclusions that may be drawn from the evidence gathered, and recommendations about the disposition of the matter." (Id. at 35.) It is the responsibility of the investigator to weigh the credibility of all individuals interviewed. (Id. at 36.) Unless additional fact finding is necessary, the Vice President makes a determination based on a preponderance of the evidence whether a violation of the Policy occurred and if so, the appropriate resolution. (Id. at 36.) The determination must be made in writing simultaneously to the complainant and respondent, along with notice to the parties of their right to request an institutional hearing. (Id.) If a final decision has been made that a violation of the Policy occurred, the respondent shall be referred to the appropriate personnel for a determination of discipline under TTU policy. (Id. at 38.)

B.    Cain's Complaint of Sexual Assault

Cain alleges that, in the early hours of August 26, 2015, she was raped by Husain Alenezi in her off-campus apartment. (Doc. No. 17 at ¶ 13.) Immediately thereafter, Cain drove herself to Cookeville Regional Medical Center, where she talked to a law enforcement officer, obtained treatment for potential injuries, and gave a statement. (Id. at ¶ 14.) Over the course of the next month, Cain "met with victim's advocates, attorneys, therapists, police officers, and university officials to obtain information about her options for seeking protection from her assailant and remedy for her assault." (Id. at ¶ 15.) She filed criminal charges on September 30, 2015, and

obtained an Order of Protection against Husain Alenezi, that was also sent to the TTU Police Department. (Id. at ¶¶ 16-17.)

On October 5, 2015, Marlene Hall, TTU's Title IX Coordinator, met with Cain. (Id. at ¶ 19.) During this meeting, Hall informed Cain her right to file an administrative complaint. (Id.) Cain decided to pursue her options in the criminal and civil justice systems before filing an administrative complaint. (Id. at ¶ 20.) Hall assured Cain that she could file the administrative complaint later. (Id.) During this meeting Cain described emotional effects since her alleged assault by Husain Alenezi, including difficulties with focus and problems with her memory. (Id. at ¶ 21.)

Approximately five weeks later, on November 11, 2015, Cain contacted Hall to request an administrative investigation and to request disciplinary action against Husain Alenezi. (Id. at ¶ 22.) The next day, Cain met with Hall to recount the details of the alleged sexual assault and to file an administrative complaint. (Id. at ¶ 23.) During this interview, Hall assured Cain that the University would investigate the claim. (Id.) For several weeks, Cain and Hall continued to communicate regularly. (Id. at ¶ 25.) Hall requested another meeting with Cain and with Hall's Title IX Investigator, Robert Owens. (Id.) On December 1, 2015, they met and again recounted the details of the alleged sexual assault by Husain Alenezi. (Id. at ¶ 26.) Cain continued to express her anxiety and the emotional distress caused by the alleged assault and her subsequent struggles to keep up in her classes. (Id. at ¶ 27.)

C.    TTU's Investigation

The results of TTU's investigation are set forth in the January 26, 2017 Investigation Memorandum ("IM") (referenced in Amended Complaint ¶ 43), which included interviews and a review of cell phone and text records. (Doc. No. 41 at 46-58.) The IM concluded that, by a

preponderance of the evidence, "at the time they engaged in sexual intercourse, [Cain] was incapacitated and unable to grant consent to such contact, and [the] respondent knew she was incapacitated and unable to grant consent." (<u>Id.</u> at 58.) The IM concluded that Husain Alenezi's conduct constituted "sexual misconduct," and more specifically "sexual assault," under the Policy. (<u>Id.</u>) Hall shared the IM with Cain by email dated March 30, 2017, explaining "[TTU] has completed its investigation and the Vice President (of Student Affairs) has concurred in the findings and recommendations[.]" (<u>Id.</u> at ¶ 43.)

The IM and Complaint present information that explains TTU's additional actions after Cain made her formal complaint.

- Cain informed Hall during winter break that she heard Husain Alenezi had withdrawn from TTU and moved to another state. (Doc. No. 41 at 46.) TTU records confirmed that Husain Alenezi was not enrolled for the next semester. (<u>Id.</u>) Cain subsequently reported to Hall that she saw Husain Alenezi walking on campus on February 6, 2016. (<u>Id.</u>) TTU records then showed Husain Alenezi as enrolled. (<u>Id.</u>)

- From February 24 through March 1, Hall sent Husain Alenezi three e-mails, which included a letter of notice regarding Cain's allegations and possible dates and times to meet. (<u>Id.</u>)

- On March 2, a local attorney notified Hall that she was representing Husain Alenezi. (<u>Id.</u>)

- On March 30, 2016, Hall, Owens, and Carpenter interviewed Husain Alenezi with his counsel. (<u>Id.</u>)

- Cain also engaged counsel. (Doc. No. 17 at ¶ 28.) In February and March 2016 Cain's counsel insisted that TTU launch an investigation into Cain's sexual assault allegation against Husain Alenezi. (<u>Id.</u> at ¶ 29.)

- On May 2, 2016, Cain's counsel requested an update and that TTU discipline Husain Alenezi. (<u>Id.</u> at ¶ 31.) TTU declined to give an update about the investigation or initiate disciplinary proceedings against Husain Alenezi. (<u>Id.</u> at ¶ 32.)

8

- Carpenter requested a meeting with Cain to answer follow-up questions, arising from her interview with Husain Alenezi. (Id.) On May 17, 2016, Cain met with Hall and Owens to answer their follow-up questions (Id. at ¶ 33) that required Cain to again recount the details of her alleged sexual assault. (Id.)

The IM contains no recitation of anything that occurred during the next seven months, until January 11, 2017, when the parties explored mediation, which was abandoned in March 2017. (Id. at ¶ 42.) To Cain's knowledge, no disciplinary action was ever taken against Husain Alenezi. (Id. at ¶ 68.)

III. The Objections

Cain objects and asserts that: (1) individual liability is permissible under Title IX; (2) her Title IX claim against TTU is viable because she has sufficiently alleged that TTU was deliberately indifferent because she has alleged that its response to her complaint was "unreasonable in light of the circumstances"; (3) she has sufficiently stated due process claims under Section 1983; and (4) the Court should exercise supplemental jurisdiction over her state law claims. (Doc. No. 52 at 1-21.) In making these arguments, she also contends that the Magistrate Judge made certain erroneous factual findings or drew certain unwarranted factual inferences, particularly regarding whether she had a "meaningful opportunity" to participate in TTU's investigation. (Doc. No. 52 at 4-9.) Defendants oppose all of Cain's objections and urge the Court to adopt the Report and Recommendation without change. (Doc. No. 53.)

IV. Analysis

"[T]his case comes before the Court in limited posture." Doe v. Univ. of the South, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009). The Court's review is "substantially circumscribed" because "the law does not allow th[e] Court to retry the University's disciplinary proceeding." Id. (quoting Gomes v. Univ. of Maine Sys., 365 F. Supp. 2d 6, 14 (D. Maine 2005)); Doe v. Belmont Univ., 334 F. Supp. 3d 877, 899 (M.D. Tenn. Sept. 27, 2018) (same). Nor may a Court "advocate for best

9

practices." Saravanan v. Drexel Univ., Civ. Action No. 17-3409, 2017 WL 5659821, at *4 (E.D. Pa. Nov. 24, 2017) (quoting Yu v. Vassar College, 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015)). Neither is this a lawsuit between Cain and Husain Alenezi.

A. Section 1983 Claims

1. Claims Against TTU and Carpenter, Hall and Owens in their Official Capacity

A "state" is not considered a "person" under Section 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989); see also Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 654 n.8 (6th Cir. 2007) ("States are protected by the Eleventh Amendment even from suits brought under Section 1983, because the statute only creates a cause of action against a 'person' who causes the deprivation of another's Constitutional rights."). "[A] public university qualifies as an arm of the state," McCormick v. Miami Univ., 693 F.3d 654, 661 (6th Cir. 2012) (citing Johnson v. Univ. of Cincinnati, 215 F.3d 561, 571 (6th Cir. 2000)), because "higher education has long been recognized as a governmental function." Hutsell v. Sayre, 5 F.3d 996, 1002 (6th Cir. 1993). Specifically, TTU is part of the Tennessee state university and community college system. See Purish v. Tenn. Tech. Univ., 76 F.3d 1414, 1418-19 (6th Cir. 1996); McQuail v. Tenn. Tech. Univ., 69 F. Supp. 3d 701, 704-05 (M.D. Tenn. 2014). It is therefore not a "person" that can be sued for damages under Section 1983. The Magistrate Judge correctly concluded that the Section 1983 claim against TTU should be dismissed.

A state official acting in his or her official capacity is also not considered a "person" under Section 1983. See Kentucky v. Graham, 473 U.S. 159, 167 (1985); Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.")

10

(internal citations omitted); Hutsell, 5 F.3d at 1002. The Magistrate Judge properly concluded that Cain's Section 1983 claims against Hall and Owens in their official capacities should be dismissed.

Cain's objections are overruled.

### 2. Claims Against Carpenter, Hall and Owens in their Individual Capacity

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Heyne v. Metro. Nashville Pub. Schs., 655 F.3d 556, 562 (6th Cir. 2011) (quoting Marvin v. City of Taylor, 509 F.3d 234, 243 (6th Cir. 2007)). Cain alleges that Hall and Owens violated both the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment.

### a. Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has stated that this language "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997). To plead a Section 1983 equal-protection claim, a plaintiff must allege that the Defendants made a distinction that "burden[ed] a fundamental right, target[ed] a suspect class, or intentionally treat[ed] one differently from others similarly situated without any rational basis for the difference." Doe v. Miami Univ., 882 F.3d 579, 595 (6th Cir. 2018) (quoting Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005)). An equal protection plaintiff "must also allege that the different treatment he received was based on 'purposeful or intentional' [ ] discrimination." Id. at 597 (quoting Smith v. City of Salem, 378 F.3d 566, 577 (6th Cir. 2004)). The Magistrate Judge found that Cain's allegations were based upon complaints that she was

11

treated differently than Husain Alenezi during the two-year investigation period, not that Defendants intentionally discriminated against her on the basis of membership in a protected class. (Doc. No. 49 at 39.) Cain essentially concedes this (Doc. No. 52 at 18), and the Court agrees.

In her objections, however, Cain that the Complaint supports a "reasonable inference" of sex discrimination because: (1) she was interviewed multiple times without an attorney present, but Husain Alenezi was only interviewed once with his attorney; (2) she was required to provide a written statement, but Husain Alenezi was not; (3) her access to university resources were limited by her fear of her attacker, while Husain Alenezi continued to enjoy full access to all university common areas and benefits; and (4) Defendants stalled the conclusion of their investigation, denied Cain the opportunity to be heard in a meaningful manner, and effectively allowed Husain Alenezi to escape punishment. (Doc. No. 52 at 18-19.) These allegations do not allow an inference of purposeful discrimination based upon gender, even if the comparators were similarly situated. Of course, Cain and Husain Alenezi are not similarly situated. Compare with Miami Univ., 882 F.3d at 595-96 (students were "similarly situated" when both were accused of sexual misconduct). Cain has referenced no appropriate comparators. "Inasmuch as [appellant] merely allege[s] that [s]he was treated unfairly as an individual by [Defendants'] actions, [her] equal protection claim [i]s properly dismissed." Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999).

Cain's objections are overruled.

b.    Due Process Claims

The Fourteenth Amendment of the United States Constitution protects individuals from the deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The clause has both a substantive and a procedural component. Procedural due process is traditionally viewed as the requirement that the government provide a "fair procedure" when

12

depriving someone of life, liberty, or property; substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (internal quotation marks omitted); EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012).

i.     Substantive Due Process

Substantive due process claims are "loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience." Miami Univ., 882 F.3d at 597 (quoting Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997)) (internal quotation marks omitted). Regarding the first category, "[t]he interests protected by substantive due process are of course much narrower than those protected by procedural due process." Bell v. Ohio St. Univ., 351 F.3d 240, 251 (6th Cir. 2003). Cain has not sufficiently pleaded a substantive due process claim premised on a deprivation of a constitutionally protected guarantee.

Regarding the second category, "[a]n action shocks the conscience when it is "arbitrary, or conscience shocking, in a constitutional sense." Id. at 599 (quoting Handy-Clay v. City of Memphis, 695 F.3d 531, 547 (6th Cir. 2012)); Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998). "[T]his characterization applies to only the most egregious official conduct, conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." Handy-Clay, 695 F.3d at 547-48 (alteration in original) (internal citations and quotation marks omitted). Even viewing the Complaint in the most favorable light to Cain, the Defendants' alleged actions do not constitute arbitrary, conscience-shocking conduct. TTU conducted an investigation that eventually resulted in an administrative finding that Husain Alenezi violated the Policy by sexually assaulting Cain. The IM contains TTU's detailed analysis. Even if TTU's investigation

13

was imperfect, misguided, inexplicably delayed, or in one or more senses unfair, the university's alleged conduct is not "so extreme in degree," so "brutal and offensive," or so utterly intolerable that it meets the highly demanding standard for conscience-shocking behavior in a constitutional sense. See, e.g., Z.J., 355 F. Supp. 3d at 686 (collecting cases holding that alleged discomfort, even if significant, in modern university sexual assault investigations is not "outrageous" conduct); compare with Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 643 (6th Cir. 2005) (describing an example of conscience-shocking conduct in which two African-American students were expelled without notice or a hearing "for seeking to purchase lunch at a publicly owned grill in the basement of the Montgomery, Alabama, county courthouse") (citing Dixon v. Ala. State Bd. of Educ., 294 F.2d 150 (5th Cir. 1961)).

Cain's substantive due process claim is dismissed.

### ii.      Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "Procedural due process claims are concerned not with the deprivation of a constitutionally protected interest in 'life, liberty, or property,' but deprivation of those interests without due process of law. When reviewing a procedural due process claim, [a court] must determine whether a protected liberty or property right is at stake and, if so, what process is due." Handy-Clay, 695 F.3d at 546 (internal citations omitted). To establish her procedural due process claim, Cain must show that (1) she had a life, liberty, or property interest protected by the Due Process Clause; (2) Defendants deprived her of this protected interest; and (3) Defendants did not afford her adequate procedural rights prior

to deprivation of the protected interest. <u>Women's Med. Prof'l Corp. v. Baird</u>, 438 F.3d 595, 611 (6th Cir. 2006).

A student's interest "in pursuing an education is included within the fourteenth amendment's protection of liberty and property." <u>Gorman v. Univ. of R.I.</u>, 837 F.2d 7, 12 (1st Cir. 1988). Thus, "[t]ime and again," the Sixth Circuit "has reiterated that students have a substantial interest at stake" when it comes to school proceedings concerning sexual misconduct. <u>Baum</u>, 803 F.3d at 582 (citing <u>Miami Univ.</u>, 882 F.3d at 600; <u>Doe v. Univ. of Cincinnati</u>, 872 F.3d 393, 399-400 (6th Cir. 2017); <u>Doe v. Cummins</u>, 662 F. Appx. 437, 446 (6th Cir. 2016); <u>Ngyuen v. Univ. of Louisville</u>, No. Civ. A. 3:04CV-457-H, 2006 WL 1005152, at *8 (W.D. Ky. Apr. 14, 2006)). Further, a university's sexual misconduct investigation process implicates a protected liberty interest because it involves students' reputation and integrity. <u>Cummins</u>, 662 F. App'x at 445 (citing <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, 437 (1971); <u>Univ. of Cincinnati</u>, 872 F.3d at 399.)

The constitutional minimum process due is "[t]he opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Mathews</u>, 424 U.S. at 333 (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965); <u>Grannis v. Ordean</u>, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process is the opportunity to be heard."); <u>Baum</u>, 903 F.3d at 581. The Court evaluates the procedures employed by TTU by considering three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." <u>Mathews</u>, 424 U.S. at 335. That being said, while "the aim of due process is a fair process, . . .

15

[d]ue process does not provide a guarantee of a perfect investigation." Chambers v. Tenn. Bd. of Regents, No. 2:16-cv-02851-JPM-dkv, 2017 WL 3218075, at *11 (W.D. Tenn. July 28, 2017). A mere failure by a university to follow its own internal guidelines in a sexual misconduct investigation does not necessarily give rise to a procedural due process violation. Miami Univ., 882 F.3d at 603; Cummins, 662 F. App'x at 445 n.2. In analyzing the alleged deficiencies in TTU's procedures, the Court focuses not on whether specific procedural protections were violated, but rather on "what protections, as a whole, were required in this case." Cummins, 662 F. App'x at 446.

The Magistrate Judge found that (1) Cain's allegations were "conclusory," and (2) Cain was given sufficient "opportunities to be heard and to meaningfully participate in the investigation process." (Doc. No. 49 at 37-38.) Cain objects to both findings and she further asserts that the Magistrate Judge unfairly drew factual inferences against her at this stage of the case. (Doc. No. 52 at 7-9, 15-18.) The Court agrees on the first point. Although the Complaint has deficits, Cain has put Defendants on notice of her specific claims by means of a detailed pleading referencing the Policy and the IM. (See Doc. No. 17.) The Supreme Court has repeatedly instructed that *pro se* litigants are to be held "to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). Further, in a complaint, "plaintiffs need provide no more than 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Maxum Indem. Co. v. Robbins Co., --- F. App'x ---, 2019 WL 3778392, at *3 (6th Cir. Aug. 12, 2019) (quoting Fed. R. Civ. P. 8(a)(2)). Cain has largely done so, and Defendants have had little difficulty understanding Cain's claims and moving to dismiss them.

The first factor is the nature of the private interest at stake. As discussed above, it is beyond cavil that a sexual misconduct investigation is a very serious matter and may have a lasting impact on the participants' personal lives, educational and employment opportunities, and reputations in the community. See Miami Univ., 882 F.3d at 600; Univ. of Cincinnati, 872 F.3d at 400; Cummins, 662 F. App'x at 446. Cain had a particularly deep personal interest at stake here, given the seriousness of her allegation of rape and alleged trauma (PTSD). Next, the Court considers "the risk of erroneous deprivation of this interest under [TTU's] current procedures and the value of any additional procedural safeguards [she] requests." Univ. of Cincinnati, 872 F.3d at 400. The Complaint alleges that Cain requested TTU begin its investigation on November 11, 2015. Under the Policy, TTU's Title IX Office had specific procedures to follow and 60 days to complete the investigation, forward its conclusions to the Vice-President for Student Affairs, and for the Vice-President to approve or disapprove the recommendations. Under the Policy, if extraordinary circumstances developed to delay that timeline, Cain had to be kept informed, given reasons, and given a new anticipated completion date.

Cain complains about the overall period of time from November 11, 2015 to March 30, 2017. This is better viewed as three smaller time periods. First, the Complaint and IM together demonstrate that from November 11, 2015 to March 30, 2016, TTU investigated Cain's administrative complaint against Husain Alenezi. TTU officials met with Cain on multiple occasions, conducted research, interviewed a witness, and issued an order of protection. TTU officials were initially advised by Cain that Alenezi was no longer enrolled, and their records confirmed that assertion. When advised to the contrary, they pursued and conducted an interview with Alenezi and his counsel. While this five-month period exceeded the sixty-day investigation

deadline, it cannot be said that TTU did not provide Cain with the constitutional minimum opportunity to be heard.

Second, Cain relies on the next seven-month time period, in which she asserts in the objections that TTU did nothing to advance the investigation of her administrative complaint. The Complaint, however, alleges nothing about what happened between May 17, 2016 and February 2, 2017, nor, as important here, how during this period her efforts were rebuffed by Defendants. (See Doc. No. 17.) There is not one single averment, for example, regarding anything Cain did during that time in an attempt *to be heard* by TTU, or anything TTU did during that time *to prevent* Cain from being heard. (Id.) The Complaint does not even allege that TTU was not pursuing the investigation during that time. (Id.) Without *any* allegation that some action or inaction by TTU deprived her of protected interests, the Complaint does not implicate a procedural due process violation during this time period.

Finally, Cain complains about the delay from February 2, 2017 to March 30, 2017. However, according to the Complaint, TTU was acting during this period under threat of litigation by Cain and in agreement with the suggestion of mediation made by Cain's own counsel. TTU's delay in releasing the IM while these events progressed is not fairly attributed to TTU as an action that deprived Cain of her due process rights.

Thus, when the Court considers "what protections, as a whole, were required in this case," Cummins, 662 F. App'x at 446, Cain does not, on balance, credibly allege facts on which a procedural due process violation is plausible. The Magistrate Judge correctly concluded that Cain was given a sufficient "opportunit[y] to be heard and to meaningfully participate in the investigation process" through March 30, 2016. After that point, Cain fails to make any credible allegations regarding a deprivation of a meaningful opportunity to be heard. Based on the

allegations before the Court, Cain had the minimum necessary constitutional chance "to be heard at a meaningful time and in a meaningful manner," Matthews, 424 U.S. at 333, even if the investigation was conducted over a protracted period of time that was troubling for Cain.

Cain's objections must therefore be overruled.

In sum, the motion to dismiss will be granted on Cain's Section 1983 claim.

B.      Title IX Claims

Title IX was enacted to supplement the ban on discrimination in the Civil Rights Act of 1964, and it is designed to prevent sexual discrimination and harassment in educational institutions receiving federal funding. Bonnell v. Lorenzo, 241 F.3d 800, 810 n.6 (6th Cir. 2001); Schaumleffel v. Muskingum Univ., No. 2:17-cv-463, 2018 WL 1173043, at *12 (S.D. Ohio Mar. 6, 2018). Title IX states that: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance. . . ." 20 U.S.C. § 1681(a). As the Court of Appeals has noted, "[e]ducation is a university's first priority [and] adjudication of student disputes is, at best, a distant second." Univ. of Cincinnati, 872 F.3d at 400 (citing Bd. of Curators of the Univ. of Missouri v. Horowitz, 435 U.S. 78, 88 (1978)).

The Sixth Circuit recognizes at least four theories of liability that a student may assert under Title IX. Miami Univ., 882 F.3d at 589 (citing Yusuf, 35 F.3d at 715); Z.J., 355 F. Supp. 3d at 673. These theories are: (1) "erroneous outcome"; (2) "selective enforcement"; (3) "deliberate indifference"; and (4) "archaic assumptions." Miami Univ., 882 F.3d at 589 (citing Yusuf, 35 F.3d at 715); Cummins, 662 F. Appx. At 451-52 & n.9; Mallory v. Ohio Univ., 76 F. App'x 634, 638-39 (6th Cir. 2003)). In addition, a "hostile-environment" theory of liability has also been recognized in some Title IX cases, although it has a less obvious application in sexual misconduct

19

disciplinary action cases. See Miami Univ., 882 F.3d at 589 (citing Doe v. Claiborne Cty., 103 F.3d 495, 515 (6th Cir. 1996)). Of these, Cain brings a "deliberate indifference" claim premised upon peer-to-peer sexual harassment.[3] (Doc. No. 17 at ¶¶ 46-50); see Miami Univ., 882 F.3d at 591; Baum, 903 F.3d at 588; see also Schaumleffel, 2018 WL 1173043, at *14 ("The deliberate indifference standard applies when a plaintiff seeks to hold a university responsible for sexual harassment.").

### 1.    Claims Against Individual Defendants

Only recipients of federal funds may be liable under Title IX. Soper v. Hoben, 195 F.3d 845, 854 (6th Cir. 1999) (explaining that the government's enforcement power may only be exercised against the funding recipient itself, and damages liability under Title IX has not extended to parties outside the scope of this power); Campbell v. Dundee Cmty. Schs., 661 F. App'x 884, 887-88 (6th Cir. 2016) (noting that Title IX does not permit individual liability against school officials because only recipients of federal funds can be held liable). Thus, the Magistrate Judge correctly concluded that Cain's Title IX claims against Carpenter, Hall, and Owens must be dismissed. Cain's objection to this conclusion is overruled.

### 2.    Claim Against TTU

TTU moved to dismiss Cain's Title IX claim on the ground that it is untimely. (Doc. No. 25.) For reasons that are unclear, the Magistrate Judge did not address this aspect of TTU's motion in the Report and Recommendation. (See Doc. No. 49 at 40-45.) The statute of limitation defense

---

[3] To be clear, Cain several times uses the term "hostile environment," but from the Complaint, Cain's objections and the authority to which she cites, Cain brings only a deliberate indifference harassment claim. (See, e.g., Doc. No. 17 at 9-11 (characterizing rape as sexual harassment and alleging TTU's alleged deliberate indifference; Doc. No. 54 at 3-4 (citing deliberate indifference caselaw and discussing hostile educational environment as byproduct of TTU's alleged deliberate indifference).) To the extent Cain may believe that she has brought any other claim under Title IX, it is insufficiently pled.

20

may be raised in a Rule 12(b)(6) motion to dismiss. Hoover v. Langston Equip. Assocs., Inc., 958 F.2d 742, 744 (6th Cir. 1992). When a motion to dismiss is made on this ground, the Court must decide whether "it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed." Bishop v. Lucent Techs., Inc., 520 F.3d 516, 520 (6th Cir. 2008) (alteration in original); see also Howell v. Farris, 655 F. App'x 349, 350 (6th Cir. 2016) ("[I]t is clear that we must decide whether it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed.") (internal quotation marks and citations omitted). If that is the case, a plaintiff cannot "escape the statute [of limitations] by saying nothing." Id. (citing Hoover, 958 F.2d at 745). Rather, a plaintiff must respond by pleading additional facts in avoidance of the statute of limitations or explaining why the statute of limitations should be tolled. Id.; CapStar Bank v. Perry, No. 3:17-cv-01221, 2018 WL 3389712, at *12 (M.D. Tenn. July 12, 2018).

Title IX does not contain its own statute of limitations, but the Court of Appeals has held that the applicable limitations period is the same that applies to state personal injury claims, which in Tennessee is one year. Lillard, 76 F.3d at 729; Doe v. Univ. of Tenn., 186 F. Supp. 3d 788, 808 (M.D. Tenn. 2016). Here, all of the events alleged in the Complaint occurred in Tennessee. The statute of limitations for Cain's Title IX claim is one year. Although the applicable time period is borrowed from state law, the date on which the statute of limitations begins to run is a question of federal law. Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007). "Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." Id. In determining when the cause of action accrues, courts look to "what event should have alerted the typical lay person to protect his or her right." Howell, 655 F. App'x at 351 (quoting Eidson, 510 F.3d at 635). As Judge Aleta A. Trauger of this Court has ruled, "[s]uffering a sexual assault on campus is, in and of itself, a type of [sexual]

21

harassment severe enough to constitute a deprivation of educational benefits" under Title IX, and thus a student has "all the information she need[s] to bring a Title IX claim against [a university] . . . as of the date she was assaulted." <u>Univ. of Tenn.</u>, 186 F. Supp. 3d at 808; <u>see also</u> <u>Soper</u>, 195 F.3d at 855 (sexual assault is severe injury sufficient to deprive student of access to the educational opportunities within the ambit of Title IX); <u>Chambers</u>, 2017 WL 3218075, at * 3 (observing that the "only" pertinent date was the date student plaintiff was sexually assaulted by defendant). The limitations period for Cain's Title IX deliberate indifference claim thus began to run when she was allegedly sexually assaulted on August 26, 2015. However, this action was not filed until September 20, 2017, over two years later. (Doc. No. 1.) The Title IX claim against TTU is untimely.

The general rule is that courts in this circuit will not extend a statute of limitations "by even a single day." <u>Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.</u>, 209 F.3d 552, 561 (6th Cir. 2000). However, Cain attempts to invoke several exceptions to this rule.[4] Here, Cain's reliance upon fraudulent concealment fails because the Complaint does not allege any facts that TTU took steps to conceal her discovery of *her injury* – i.e., the alleged sexual assault. Indeed, that would be difficult to do. <u>See</u> <u>Roberson v. Macnicol</u>, 698 F. App'x 248, 251 (6th Cir. 2017) (plaintiff must specifically plead allegations of fraudulent concealment); <u>Robinson v. Baptist Mem. Hosp.</u>, 464 S.W.3d 599, 609 (Tenn. Ct. App. 2014) (under Tennessee law, fraudulent concealment can only toll a statute of limitations when "the defendant has taken steps to prevent the plaintiff from discovering he or she was injured").

---

[4] Cain briefed these exceptions in response to the motion to dismiss. (Doc. No. 27.) Because the Magistrate Judge did not address the statute of limitations in the Report and Recommendation and the Court considers it in the first instance, the Court considers the prior arguments made by the parties on this subject. (Doc. Nos. 25, 27.)

Cain also invokes equitable tolling. But, "[h]aving borrowed the state's statute of limitations . . . , [the Court] appl[ies] the state's tolling statute, as long as the result is not inconsistent with federal law or policy." Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 845 (6th Cir. 2015) (citing Bishop v. Children's Ctr. for Developmental Enrichment, 618 F.3d 533, 537 (6th Cir. 2010). Cain "does not cite any [Tennessee] equitable-tolling rules, so [s]he has forfeited any argument [s]he might have had under those rules." Macnicol, 698 F. App'x at 250.[5]

Even if Cain could rely on federal tolling rules, she would not succeed. "The doctrine of equitable tolling is applied sparingly by federal courts," and is typically used "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003) (citations and internal quotation marks omitted); see., e.g., Price v. Lewis, 119 F. App'x 725, 726 (6th Cir. 2005) (denying equitable tolling where prisoner made filing 30 days late and had spent 60 days of limitations period in "lock-down" psychiatric unit). The Court considers five factors: "(1) the lack of notice of the filing requirement; (2) the lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to Husain Alenezi; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. Bullington v. Bedford Cty., Tenn., 905 F.3d 467, 470 (6th Cir. 2018) (citing Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 187 (6th Cir. 2008)). "These five factors are not comprehensive, nor is each factor relevant in all cases." Hughes, 542 F.3d at 187-88 (quoting Solomon v. United States, 467 F.3d 928, 933 (6th Cir. 2006)).

---

[5] Johnson and Roberson are Section 1983 cases. However, because the Court borrows the state statute of limitations for a Title IX claim in the same manner it does for a Section 1983 claim, the Court of Appeals' pronouncements apply with equal force. Haley, 353 F. Supp. 3d at 734 n.7.

23

Here, Cain diligently pursued her rights, even though there is no question that the investigation moved slowly. She unquestionably could have brought suit at any time during the year-long limitations period that began on August 26, 2015 and expired on August 26, 2016. Most importantly, Cain admittedly engaged counsel in January 2016, and he represented her throughout the remaining seven months of the limitations period (and beyond). (Id.) Cain's ignorance of the deadline for filing suit while being represented by counsel "does not satisfy the requirements of due diligence and will not toll the statute [of limitations]." Hoover, 958 F.2d at 744 (citing Campbell v. Upjohn Co., 676 F.2d 1122, 1126 (6th Cir. 1982)). Further, much of what Cain complains occurred *outside* the limitations period (i.e., after August 26, 2016), and is of no moment for this analysis. The Court simply cannot conclude that exceptional circumstances made it impossible for Cain to timely file her Title IX claim against TTU such that she is entitled to equitable tolling.

Finally, Cain raises the continuing violations doctrine. However, as this Court explained in Haley v. Clarksville Montgomery County School System, 353 F. Supp. 3d 724, 735 (M.D. Tenn. 2018), the Sixth Circuit has observed an "extreme" reluctance to apply this doctrine outside of the Title VII context. See Dibbern v. Univ. of Mich., No. 12-15632, 2016 WL 2894491, at *19 (E.D. Mich. May 18, 2016) (quoting LRL Props. v. Portage Metro. Housing Auth., 55 F.3d 1097, 1105 (6th Cir. 1995)). Further, courts in this circuit and elsewhere have concluded that the doctrine indeed does not apply in Title IX cases. See id.; see also, e.g., Folkes v. New York Coll. of Osteopathic Med., 214 F. Supp. 2d 273, 288-91 (E.D.N.Y. 2002) (explaining that the application of the continuing violations theory in Title IX cases conflicts with the actual-notice standard set forth in Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998)).

24

Cain's objections are overruled. This aspect of the Report and Recommendation will be set aside and Cain's Title IX claim against TTU will be dismissed on the ground that it is untimely.

C.    State Law Claims

Based upon the conclusion that the Court should dismiss Cain's federal claims, the Magistrate Judge recommended that the Court decline to exercise jurisdiction over Cain's state law claims. Cain objected to that conclusion in conjunction with her objections to the rulings on the federal claims. As discussed above, the Court has concluded that Cain's federal law claims will be dismissed.

The Court may decline to exercise supplemental jurisdiction over a state law claim if it dismisses "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]" Id. at 952 (quoting Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)). Cain's two state law claims are of the type that that Tennessee courts routinely and skillfully consider. Moreover, they involve considerations of the actions of Tennessee officials and defenses of immunity and timeliness under the Tennessee Code. Fairness and comity dictate that the Tennessee courts should be given the opportunity to decide these claims. After weighing the relevant factors, the Court does not find any reason to depart from the general rule, and therefore declines to retain supplemental jurisdiction over Cain's state law claims for negligent and intentional infliction of emotional distress.

Cain's objections are overruled.

V.    <u>Conclusion</u>

For the reasons explained herein, the Report and Recommendation will be adopted in part and set aside in part; Cain's objections will be overruled in part and sustained in part; and Defendants' Motion to Dismiss will be granted. The Court will dismiss Cain's federal claims with prejudice and decline to exercise supplemental jurisdiction over Cain's state law claims, which will be dismissed without prejudice.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE